Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. OTHER PLAN PROVISIONS

None

                                                  High-Market Corporation

                                                  By:/s/ Paula Herb, President_____
                                                  [Signature of the Plan Proponent]


                                                  /s/ Robert J. Morje_____
                                                        [Signature of the Attorney for the Plan Proponent]

Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this Disclosure Statement as Exhibit F.

    2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $ 120000  The final Plan payment is expected to be paid on September 2014.

The anticipated income is a conservative estimated of rental income which includes both rent and pass through expenses of taxes and insurance.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V. **EFFECT OF CONFIRMATION OF PLAN**

  A. **DISCHARGE OF DEBTOR**

<u>Discharge</u>.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:  (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

  B. **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

  C. **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Non accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

D. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was September 2, 2009.*

    2.    *What is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

    3.    *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].*

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.    **Votes Necessary to Confirm the Plan**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.***

The following are the anticipated tax consequences of the Plan:
Tax consequences of the plan to the debtor would likely be minimal, except to the extent that payment of accrued unpaid mortgage interest and taxes might serve to reduce income tax liability in the year of payment.

Tax consequences to creditors of discharge would be generally limited to the ability to recognize losses which have not otherwise been recognized.

Tax consequences of post confirmation payments to creditors may cause recognition of income to the extent the claims had previously been written off or down.

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2 & 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes 1 3 & 4 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity

2. *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
| Paula Herb | | yes | President | $ 500 monthly |
| Phil Herb | | yes | Secretary | $ 500 montly |
| | | | | |

E. **Risk Factors**

The proposed Plan has the following risks:

Default of tenants with extended period of no rental income would render the plan unfeasible.

F. **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 and the treatment of Class 5 Claims also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection of the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is 20 days prior to the date of hearing on confirmation of the Plan.*** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G. **Tax Consequences of Plan**

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | Tenants | IMPAIRED | Rights of tenants to possession pursuant to leases existing at the commencement of the case shall remain in full force and effect. Tenants without current leases shall retain such rights as exist under Ohio Law. Claims of tenants arising pre-petition asserting breaches of leases or other claims related to anticipated loss of possession shall be disallowed in their entirety and are deemed disputed for all purposes herein. |
| 4 | General Unsecured Class | UNIMPAIRED | PAID IN FULL WITHIN 30 DAYS OF EFFECTIVE DATE OF PLAN |

4.  *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.,* equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

| Class# | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity interest holders | UNIMPAIRED | Retain their interest in the corporation in exchange for continuing management services. |

D. **Means of Implementing the Plan**

1.  *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Continuing operations of the debtor including collections of rents, taxes and pass through expenses to tenants.

the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

|  |  |  |
| --- | --- | --- |
| Class 2 – Secured Claims of Fifth Third Bank | Impaired | Class 2 consists of the mortgage claims of Fifth Third Bank secured by the real estate owned by the debtor located at 473-479 North High Street, Columbus Ohio. Said claims are fully secured, and shall be paid, commencing on the effective date of the plan, in equal monthly installments of $ 2300   as to the first mortgage and  $ 200    as to the second mortgage, the same representing a payment sufficient to amortize the respective loans over a period of 30 years with interest at the rate of 4.5 % per annum.  Both loans will be paid in full by refinance within 10 years of the effective date of the plan. |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

NONE

| Class # | Description | Impairment | Treatment |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |

3. *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es] 3_ and _5__, which contain general unsecured claims against the Debtor:

| Petition Date | | |
|---|---|---|
| Professional Fees, as approved by the Court | $ 5000.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | n/a | Paid in full on the effective date of the Plan |
| Other administrative expenses | none | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | unknown | Paid in full on the effective date of the Plan |
| TOTAL | 5000 | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Real Estate Taxes | 90000 | | Annual payments of $22,000. Total Payout Amount = $90000 |
| Internal Revenue Service | 100.00 | | Priority tax claims proven and allowed shall be paid in full within 30 days of effective date of plan. |

C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If

The identity and fair market value of the estate's assets are listed in Exhibit B. The valuation of the building is based on appraisal.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is is forth in Exhibit D

III. **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

   A. **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

   B. **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

   1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | none | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the | n/a | Paid in full on the effective date of the Plan, or according to terms of obligation if later |

The Managers of the Debtor during the Debtor's chapter 11 case have been: Phillip and Paula Herb.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Phillip and Paula Herb. The responsibilities and compensation of these Post Confirmation Managers are described in section III-D of this Disclosure Statement.

D.     **Events Leading to Chapter 11 Filing**

The active day to day management of the Corporation has been the province of Phillip Herb since 1992. The operation was successful and ran in the black for more than 15 years. In the 18 months prior to the filing of this case, Mr. Herb succumbed to a long standing struggle with depression, and failed to properly oversee or managed the business of the debtor. These failures included non-payment of Real Estate Taxes owed to Franklin County, as well as a general neglect of building maintenance and repair. The result was a foreclosure and other litigation which was also ignored by Mr. Herb. Mrs. Herb, title notwithstanding, has for many years delegated all management to Mr. Herb, and only became aware of the problems sustained by the company shortly before the commencement of this case.

E.     **Significant Events During the Bankruptcy Case**

During the pendency of this case Mrs. Herb has assumed an active role in the daily management of the Company, has returned the company to the practice of maintaining current expenses, and has undertaken significant repairs and maintenance as required for the smooth operation of the building and the businesses it houses. Adequate protection payments have been made to Fifth Third Bank on the Mortgages.

F.     **Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

G.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

H.     **Current and Historical Financial Conditions**

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Robert J. Morje, Attorney, PO Box 6545 Columbus OH 43206. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date set forth in the order setting the hearing on confirmation or it will not be counted.

      3. *Deadline For Objecting to the [Adequacy of Disclosure and] Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon debtors counsel and the other entities described in the order setting the hearing on confirmation.

      4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Robert J. Morje, Attorney for the Debtor at PO Box 6545 Columbus OH 43206.

  C. **Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II. **BACKGROUND**

  A. **Description and History of the Debtor's Business**

The Debtor is a Ohio Corporation which, since 1992 has been in the business of operating the commercial building at 473-479 North High Street, Columbus Ohio.

  B. **Insiders of the Debtor**

The Insiders of the Debtor are the equal shareholders, Phillip and Paula Herb, who are husband and wife and are President and Treasurer of the debtor respectively. Mr. and Mrs. Herb are the sole officers of the Corporation, and have been uncompensated during the pendency of the Chapter 11 case.

  C. **Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Phillip and Paula Herb, as listed in II B

I. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of **HIGH-MARKET CORPORATION** (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the **PLAN OF REORGANIZATION OF HIGH-MARKET CORPORATION, DATED JUNE 28, 2010** (the "Plan") filed by High-Market Corporation on June 28, 2010. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 4-8 of this Disclosure Statement.

   A.   **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

   B.   **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

   1.   *Time and Place of the Hearing to Confirm the plan*

The hearing at which the Court will determine whether to confirm the Plan will be set by an order of the Court which will be served on you.

   2.   *Deadline For Voting to Accept or Reject the Plan*

# United States Bankruptcy Court

Southern District Of Ohio, Eastern Division

| | | |
|---|---|---|
| **In re:** | : | **Case No. 09-54675** |
| | : | **Chapter 11** |
| **HIGH-MARKET CORPORATION,** | : | |
| | : | **Judge Caldwell** |
| **Debtor/Debtor-In-Possession** | : | |

<u>**HIGH-MARKET CORPORATION]'S DISCLOSURE STATEMENT, DATED JUNE 28, 2010**</u>
*Table of Contents*

| | | |
|---|---|---|
| I. | INTRODUCTION | Page 2 |
| II. | BACKGROUND | Page 3 |
| III. | SUMMARY OF PLAN & TREATMENT OF CLAIMS & INTERESTS | Page 4 |
| IV. | CONFIRMATION REQUIREMENTS AND PROCEEDINGS | Page 9 |
| V. | EFFECT OF CONFIRMATION | Page 12 |
| VI. | OTHER PLAN PROVISIONS | Page 12 |
| | EXHIBITS | Page 1314 et seq |